## AD LISTER *v.* THE STATE.

1. RECALL OF WITNESS. — Differences of counsel as to the testimony of a witness do not necessitate a recall of the witness. Proper practice, in such case, is for the judge to inform the jury that, if they shall disagree as to the testimony, the witness will be recalled at their instance.

2. SAME. — The recall of a witness, or the introduction of a new witness after argument to the jury has commenced, is matter of discretion with the court trying the cause; and its action will not be reversed by this court unless it be made clearly apparent that such discretion was abused.

3. CHARGE OF THE COURT. — The sufficiency and applicability of a charge in a felony case are to be tested by articles 494 and 495 of the Code of Criminal Procedure (Pasc. Dig., arts. 3059, 3060), which require that a written charge distinctly setting forth the "law applicable to the case," and stating plainly the "law of the case," shall be delivered to the jury. These requirements refer and apply to the *case made by the pleadings and the evidence;* and they are not complied with unless the charge gives to the jury the law applicable to every legitimate deduction from the facts in evidence.

4. SAME. — In a trial for murder there was evidence tending to prove that shortly before the fatal rencounter the accused saw the deceased exhibiting

a pistol, and that subsequently, when the accused shot the deceased, the latter was advancing on him in a threatening manner, and with his right hand apparently at the pocket in which he had previously placed his pistol, in the presence of the accused. *Held,* that this evidence made it incumbent on the court below to give in charge to the jury the law of self-defense as part of the law applicable to the case, and to have left it to the jury to determine whether the apparent danger was such as to require the accused to kill the deceased in order to save his own life, or to protect himself from serious bodily injury.

5. EVIDENCE. — In a trial for murder the defense proposed to prove the bad character of two associates of the deceased, and that, while he was in a dying condition, they attempted to rob him. *Held,* that the proof was properly excluded for irrelevancy.

APPEAL from the District Court of Harrison.   Tried below before the Hon. A. J. BOOTY.

In Texas Court of Appeals Reports, volume 1, page 739, will be found the report of this cause upon a former appeal. That report, in connection with the opinion rendered on the present appeal, discloses the material facts.

*McAdoo & Russell,* for the appellant.

*George McCormick,* Assistant Attorney General, for the State.

WINKLER, J.   The appellant was tried and convicted of murder in the second degree of one Joseph Dillon, his punishment being assessed by the jury at confinement in the penitentiary for a period of twenty-six years.   Motion for a new trial was overruled, and from the judgment an appeal is taken, and this court is asked to reverse the judgment on the following assignment of errors:

1. The court erred in its rulings upon the evidence.

2. In admitting the dying declarations of the deceased.

3. In refusing to permit the defendant to introduce the witness Caroline Adams as requested by the defendant.

4. In refusing to permit the witness E. P. M. Johnson

to state that the associates of the deceased, when he (deceased) was in said witness' office, robbed deceased of his pocket-book, and that he (witness) overtook them and caught them, and took it from them.

5. The court erred in its charge to the jury.

6. The court erred in overruling the motion of defendant for a new trial.

The material questions presented for our consideration, whilst they enter into, and form part of, the grounds set out in the motion for a new trial, and are in substance embraced in the assignment of errors, are more fully and specifically set out in bills of exceptions taken at the trial and set out in the transcript, and which, for convenience of reference, we have separated into paragraphs, numbered consecutively as they occur, and which will be considered, so far as may be deemed necessary, in the same order, as follows:

1. " Be it remembered that, on the 23d day of May, 1877, at the April term of the District Court of Harrison County, Texas, the above cause was called for trial, and was tried; and on the trial, and during said trial, and during the argument of the same, there was a disagreement between counsel for the state and for the defendant as to the testimony of the state's witness Caroline Adams, as to whether said witness had testified that the defendant had a pistol, and she felt the same on his person before the altercation between the deceased and the defendant, in the house testified to by the state's witness; and the defendant's counsel moved the court to permit them to recall said witness, Caroline Adams, to state what her testimony was on that subject, to which motion the prosecuting attorney objected, and the court sustained said objection. Whereupon the defendant's counsel moved the court for permission to introduce said witness to testify on said subject in the interest of justice, to which motion the state's counsel objected; the court sustained the

objection and refused the same, to which said ruling the defendant's counsel excepted.''

2. '' And be it further known that the defendant's counsel objected to the introduction on said trial of the testimony of Dr. E. P. M. Johnson to statements made by deceased, in the nature of dying declarations, when the testimony of said Johnson shows that other persons than himself, in his absence, might have induced the making of such statements without his knowing the same. The court overruled said objection and permitted said testimony to go to the jury; to which said ruling of the court the defendant's counsel excepted.''

3. ''And be it further known that on the trial of this cause the defendant's counsel asked the court to give the following special charges, to wit:   ' In order to convict the defendant of the crime of murder in the first degree, the evidence must show, beyond a reasonable doubt, that the defendant deliberately formed in his mind the purpose to kill Dillon before the act of killing was done; and if the evidence shows that, after the defendant had been assaulted by another person than Dillon, with a pistol, the defendant went away and armed himself with a pistol to defend himself, and returned after being so armed, without a purpose to engage in a difficulty with Dillon, and to kill Dillon in such difficulty, then the fact (if such be the fact) that the defendant armed himself after the assault of the first man (not Dillon) upon defendant, and before any difficulty with Dillon, and afterwards, in a difficulty with Dillon, he killed Dillon, then the jury will not be authorized to assume that the arming of defendant and his subsequent return to the house was with the purpose to kill Dillon.' ''

4. '' If the defendant was assaulted by an armed man, who drew upon him a cocked pistol, under such circum-

stances as led the defendant to fear death or some serious bodily harm from such man, then the defendant had a right to arm himself, so as to be upon an equal footing with his antagonist; and if subsequently, in a difficulty with Dillon, he slew Dillon, the fact that the defendant was so armed does not authorize the jury to find the defendant guilty of murder in the first degree, by reason of the fact that he had so armed himself on that day and returned to the place of the first assault."

5. "If Dillon, without proper provocation, assaulted the prisoner with a pistol, or followed the prisoner to the house of Eliza Massie and America Brannon and there threatened, in a serious manner, to take the life of the prisoner, and afterwards the deceased drew a pistol upon the defendant without proper provocation, and so acted towards the prisoner as to lead him to a reasonable belief that he was about to lose his life, or receive at the hands of Dillon great bodily harm, then about to be inflicted, and he shot and killed Dillon at the time of such threatened death or serious bodily harm, then the jury will find him not guilty."

6. "The defendant is presumed to be innocent until his guilt is established by the evidence; and, if the jury are not satisfied that the defendant is guilty of any degree of homicide beyond a reasonable doubt, then they will find him not guilty; and the defendant is entitled to any reasonable doubt as to his guilt of the various degrees of homicide."

7. "The defendant is guilty of no crime if he killed Dillon in order to prevent Dillon from inflicting death or great bodily injury upon him, if Dillon, at the time of such killing, was so acting as to lead the defendant reasonably to believe that, at the time, he (Dillon) was about to kill defendant, or to inflict great bodily harm upon him; and he (defendant) had a right in determining the intentions of Dillon, in connection with his (then) acts or movements, to

consider any previous acts or threats of Dillon towards him."

" Which said special charges were refused by the court, to which said ruling the defendant's counsel excepted."

8. " And be it further known that, in lieu of special charges asked by defendant's counsel, the court gave an additional and modified charge, without the consent of defendant; which said additional charge, as given, was objected to by defendant's counsel."

9. " And be it further known that the court overruled the defendant's motion for a new trial ; to which said ruling the defendant's counsel excepted. And defendant's counsel tender this his bill of exceptions to all of said rulings, and pray the same be signed, sealed, and made a part of the record of the cause."

10. To which is appended the following, by the judge :

" I approve the above and foregoing as a correct bill of exceptions taken on the trial of this cause.

" I further state that the jury were informed — when the motion to admit a second time the witness Caroline Adams, as above stated — that if, after their retirement, they should disagree as to the statement of any one of the witnesses in the cause, that it was their right to come into the court-room and make known the fact of their disagreement, and that the witness in regard to whose testimony they so disagreed would be required to appear before them and restate what said witness had testified to on the trial in regard to the particular matter on which they disagreed.

" The clerk will file this paper as a part of the record in this cause." Signed by the judge, and with the file-mark of the clerk set out in the transcript.

Another bill of exceptions is set out in the transcript as follows :

11. " The witness E. P. M. Johnson was on the stand,

and, after having testified to the character and appearance of the deceased, and of the character and appearance of his two associates, the defendant's counsel, in the same connection, offered to prove by said witness that the associates of the deceased robbed the deceased, while he, the deceased, was in said witness' office, of his pocket-book, and that he, the witness, overtook them and caught them, and took it from them, to which the counsel for the state objected, and the court sustained the objection to the matter offered to be proved; to which ruling the defendant, through his counsel, excepted and gave notice of appeal to the Court of Appeals."

12 "And the defendant's motion for a new trial came on to be heard, and the court, after considering the same, overruled said motion; to which defendant, through his counsel, excepted and gave notice of appeal to the Court of Appeals."

Which was also approved by the judge as correct, and ordered to be filed as a part of the record, and marked "*filed*" by the clerk.

It is not proposed to enter upon an extended discussion of the various questions presented in the several paragraphs set out in the bills of exception, but only to notice them in so far as may be indispensable to a determination of this appeal, and briefly such subjects as are likely to arise on a subsequent trial.

1. As to the action complained of in the first bill of exceptions, little more need be said than that no error is perceived in the ruling of the court. Two questions are involved, to wit:

First, the refusal to recall the witness during the argument of the case on a disagreement of counsel as to what the witness had testified. The judge indicated the proper rule of practice by informing the jury that if they, in their retirement, should disagree, they could return to the court-room,

when any witness would be recalled and required to restate the testimony on the given point upon which they had disagreed. It would not be regular to recall a witness whenever counsel should disagree as to what a witness had said; so long as the jury remember the testimony, and do not disagree as to what it was, there is no occasion for recalling witnesses. Code Cr. Proc., art. 615 (Pasc. Dig., art. 3080).

The second proposition embraced was that of reintroducing the witness in order to give evidence which, defendant's counsel claim, the ends of justice demanded. The propriety of recalling a witness, or of introducing a new witness after the evidence had been concluded and the argument had commenced, was purely a matter within the sound discretion of the court. In such matters this court will not reverse the action of the court below unless it should be made clearly to appear that the discretion given had been abused. Such abuse of discretion does not appear in this instance, and we find no error in the rulings of the court. Pasc. Dig., art. 3046.

2. With regard to the admission of the dying declarations of the deceased as proven by the witness Dr. Johnson. This identical question was raised in this case when before this court on a former appeal (1 Texas Ct. App. 739), when the main question raised by this exception was decided against the view taken by the counsel for the defendant. It is insisted, however, that the testimony of Dr. Johnson shows that the deceased was surrounded, at the time of making the statements offered in evidence, by circumstances shown to be materially different from those surrounding him at the time as disclosed by the evidence on the former trial. It is conceded that the surroundings of the dying man, as shown by the testimony on this trial, were in some respects different from those shown on the former trial; yet it is not perceived that these differences were of such a character or of such materiality as to render the declarations

inadmissible under the provisions of the Code, or to take them out of the ruling of this court on the former trial.

The third, fourth, fifth, sixth, seventh, and eighth propositions embraced in the bill of exception, relating to and setting out charges asked by the defendant and refused by the court, may be considered together, and taken in connection with each other and with the general charge as given by the court.

In so far as the several charges, both those given and those refused, relate exclusively to murder in the first degree, it will not be incumbent on the court to discuss them at length, for the reason that, whether strictly correct or not, their consideration is rendered immaterial, for the reason that the appellant was virtually acquitted of that degree of the offense by being convicted of murder in the second degree. These charges need be considered only in so far as they properly relate to the offense of murder generally, without reference to the different degrees.

The foundation upon which our decisions which determine the sufficiency or insufficiency, the applicability or inapplicability, of a charge rest is found in two provisions of the Code of Criminal Procedure. One is the requirement made of the judge who presides at the trial of one accused of felony that he shall deliver to the jury a charge in writing, in which *he shall distinctly set forth the law applicable to the case* then on trial, and the other which makes it the duty of the judge *to state plainly the law of the case* then being tried. Code Cr. Proc., arts. 494, 495 (Pasc. Dig., arts. 3059, 3060).

By the expressions, "the law applicable to the case," and "the law of the case," as employed in the Code, evidently is meant the law applicable to the case as made by the proofs—the law applicable to the pleadings and the evidence; and this has been the uniform construction given to them by the Supreme Court and by this court. *Davis* v. *The*

*State*, decided at the present term of this court, *post*. The judge is said to have performed that duty when he shall have instructed the jury as to the law applicable to every legitimate deduction which the jury may draw from the facts in evidence. *Jobe* v. *The State*, 1 Texas Ct. App. 186 ; *Johnson* v. *The State*, 27 Texas, 758.

Whilst this proposition is true and correct, the converse thereof must also be true : that, when the judge fails to instruct the jury as to any legitimate deduction which they may draw from the evidence, he fails to charge the law of the case, or applicable to the case as made by the evidence. It is of the first importance that the charge of the court should properly instruct the jury in the law applicable to the case on trial ; but especially is this so in criminal trials, where the jurors are not the judges of the law, but are '' bound to receive the law from the court, and be governed thereby.'' Code Cr. Proc., art. 593 (Pasc. Dig., art. 3058). A strict observance of these requirements will generally, before intelligent jurors, insure a fair and impartial trial, and a wholesome administration of the criminal law in the vindication of the innocent and the sure punishment of the guilty ; whilst a departure therefrom would open wide the door which leads in the opposite direction.

It is objected to the charge given by the court that it is based upon a hypothetical state of facts not found in the record, the hypothesis being that the defendant went away from the scene of conflict and armed himself, after a difficulty with Dillon, the deceased ; while counsel contend '' there is not one word in the testimony of any witness to justify such hypothetic case. The whole assumption of such a fact,'' they say, '' is without evidence to support it.'' We are of opinion this position, to the full extent claimed by counsel, is not tenable. There is, we think, enough in the evidence to warrant an instruction on the state of case assumed ; but we are also of opinion the judge, in his

charge, laid so much stress upon this idea that it became incumbent on him to have instructed the jury as to what would have been the law, and what their verdict should have been, should they find from the evidence that the killing did not take place under that, but another and different, state of facts, which, in our opinion, was warranted by the evidence.

In this respect we think the court failed in a material matter to charge the law applicable to the case. This error was pointed out by the request of the defendant's counsel to give suitable instructions, in the way of additional charges on the subject. See the special charge set out in paragraphs four, five, six, seven, eight, of the bill of exceptions. The first of these special charges is made to relate to murder in the first degree, yet it was a proper instruction; if that state of facts existed, the defendant could not have been convicted of murder in either degree, unless upon other facts than the arming set out in the charge. It was error to refuse a suitable instruction on this subject. *Lester* v. *The State*, 2 Texas Ct. App. 433; *Murray* v. *The State*, 1 Texas Ct. App. 417.

The charge set out in the fifth paragraph was proper under the evidence, and should have been given.

In *Williams* v. *The State*, 2 Texas Ct. App. 271, this court held: "Under our Code, when an unlawful attack is made upon a defendant, and the attack is of such a nature that the defendant has reasonable grounds to believe that he is in immediate and impending danger of being murdered or maimed by his assailant, he is justifiable in killing his assailant when, at the time of the killing, some act has been done by the deceased showing evidently an intention to commit such offense; and the defendant, in such case, may act promptly, without resorting to other means before killing his assailant; because, in such a case, the law presumes the party's safety depends upon his prompt action in killing his

assailant. Pasc. Dig., art. 2226. And, although the attack may be unlawful and violent, yet if the act done by the deceased indicated a less degree of personal injury than to murder or maim, * * * then, before the killing can be justified or excused, all other means must be resorted to ( except that the party so unlawfully attacked is not bound to retreat before killing his adversary ) for the prevention of the injury, and the killing must take place while the party is in the very act of making such unlawful and violent attack." Pasc. Dig., art. 2228.

Those directions were not properly observed in the charges given in this case. *Horbach* v. *The State*, 43 Texas, 258.

If, as in Horbach's case, the party were permitted to act upon appearances of danger, with how much greater force would the rule apply when, as in this case, there was evidence tending to show that immediately before the killing the defendant saw the deceased with a pistol, and that at the very time the deceased was shot by the defendant he was advancing upon the defendant in a threatening attitude.

The matter should have been left for the jury to determine, whether the danger was such as to require the defendant to slay the deceased in order to save himself from the loss of his life or the infliction of serious bodily injury.

The charge given nowhere properly instructs the jury on the subject of self-defense. The law has such regard for the safety of both person and property as to render homicide justifiable, if done in the protection of either, against any unlawful and violent attack other than when it takes place to prevent murder or maiming; but in such cases the language of the Code is that all other means must be resorted to for the prevention of the injury, and the killing must take place while the person killed is in the very act of making such unlawful and violent attack, and in that case the Code expressly provides that the party whose person

or property is so unlawfully attacked is not bound to retreat in order to avoid the necessity of killing his adversary. And wisely so, for it is no difficult matter to imagine a case when to retreat would but increase the danger, and that an attack may become so sudden and violent ·as that the person so attacked has no other means of safety than in meeting the attack with the utmost promptness and with all the means of defense he can command. But the attack upon the person of an individual, in order to justify homicide, must be such as produces a reasonable expectation of fear of death or some serious bodily injury. See Penal Code, arts. 570–572 (Pasc. Dig., arts. 2228–2230).

11. The exception here taken is to the ruling of the court in refusing to permit the defendant to prove by the witness Dr. Johnson the character and conduct of persons said to have been the associates of the deceased, and their conduct after the wounding and before the death of the deceased. We know of no rule of evidence which would authorize the admission of such testimony as that offered and set out in the bill of exceptions. It did not, so far as we can discern, have any bearing upon the issue then being tried, and was, therefore, irrelevant and inadmissible. True, the evidence offered would have been cumulative of other testimony drawn out by the state from the same witness, who gave a very unfavorable account of the deceased and his companions, and which was admitted without objection; but we do not see how the defense would have been benefited by proof that these associates attempted to rob the dying man of his money.

The only point remaining, so far as the bills of exception are concerned, relates to the overruling of the motion for a new trial. The main ground arises on the charges of the court, already considered as far as necessary.

It does not appear from the transcript precisely what

charge of the court is alluded to in the statement in the bill of exceptions as the modified charge, given in lieu of the charges asked by the defendant's counsel and refused by the court.   There is a charge set out in the transcript which seems to have been added after the judge had completed and signed his general charge, which may be inferred to be the charge alluded to, which is as follows :

" The jury are also instructed that, if they believe from the evidence that on the day of the killing the defendant had a difficulty with any other person than Dillon, and that he went away and armed himself, with a view to meet such other again, for the renewal of the difficulty with such other person, or of being prepared for a renewal of it by such other person against him, they will not consider these things in trying him for the killing of Dillon, but they will consider the evidence in this case alone in connection with his difficulty with Dillon. "

This charge, we think, fails to meet the principles of law enunciated in the charges which were refused, or to neutralize the probable effect of the prominence given to the arming for the purpose of renewing a former difficulty, as set out in the main charge, as before mentioned.

One main ground of objection to the entire charge is that it keeps too prominently before the minds of the jury the connection of the act of killing with another difficulty, which, as we have seen, was a proper subject for the jury to have been instructed concerning; yet it does not clearly and distinctly give to the jury any charge as to the law which would govern in the event that the jury had believed from the evidence that the killing resulted solely owing to matters  between the slayer and the slain, unconnected with other parties or a former difficulty with other persons. To our minds the jury must have been misled by the charge to have been warranted in their finding, from the

evidence as set out in the transcript, if the witnesses are to be believed.

Because of error in the charge of the court the judgment is reversed and the cause remanded.

*Reversed and remanded.*